Booth, Chief Justice,
delivered the opinion:
This case was first decided by the court on June 10, 1929. The plaintiff recovered a judgment for $4,273.35. On August 9,1929, defendant filed a motion for a new trial, alleging not only errors of law but requesting a remand of the case to the general docket, if the court should adhere to its opinion, in order to permit the defendant to adduce certain testimony pertinent and material to the issues decided by the court.
On November 4,1929, the court entered and announced the following order and memorandum:
“ It is ordered this 4th day of November, 1929, that the defendant’s motion for a new trial be and the same is allowed.
“ The findings of fact, judgment, and opinion heretofore filed are vacated, set aside, and withdrawn, and the case is remanded to the General Docket with leave to both parties to take testimony in accord with the memorandum below.
“ Memorandum
“ The motion for a new trial in this case is for the purpose of introducing evidence as to the charging to prisoners (soldiers) the cost of their transportation, the court having held that where their transportation requests were endorsed ' Commanding officer notified of amount to be charged against the soldier,’ the burden was upon the Government, if it sought land-grant deductions, to prove that the cost of transportation was not so charged.
*283 “ Necessarily sucb burden must rest upon the Government, assuming, as the court assumes, that charging of the cost precludes land-grant deductions because, if for no other reason, the information is with the Government and not with the plaintiff. The cases cited by the Government in its brief — Illinois Central R. R. v. United States, 62 C. Cls. 61, and Louisville & Nashville R. R. v. United States, 62 C. Cls. 154 — merely hold that the transportation of military guards and prisoners was subject to land-grant deduction. In those cases the endorsement in question did not appear.
“The evidence should show what amounts, if any, were charged to the prisoner on account of transportation of the guard. For the cost of the prisoner’s transportation includes the fare paid for his guard.”
Thereafter testimony was taken and the parties to the case now stipulate that the essential facts are embodied in Finding YI. The original findings, with this exception, are agreed to as correct. The case was then again argued orally before the court and submitted on March 11, 1931.
In the-opinion of this court, announced June 10, 1929, the court said:
“ This case in practically all of its aspects presents contentions similar to those advanced in the cases of the Illinois Central Railroad Co. v. United States, 62 C. Cls. 61, and Louisville & Nashville Railroad Co. v. United States, Id. 154. An application for a writ of certiorari was denied by the Supreme Court in the Illinois Central ease, October 18, 1926 (213 U. S. 710). The court is, therefore, of the opinion that as to members of the Officers’ Beserve Corps, military prisoners and guards, and Navy nurses the issue as to the right of the Government to land-grant deductions on account of transportation furnished for their necessary travel has been determined. There is nothing in the argument now advanced as to error in previous decisions which we think warrants reconsideration of the issue as contended for.
“ The first of the new items in suit concerns engineer officers of the War Department traveling under detail for purposes connected with river and harbor improvement work or attending meetings of the California Debris Commission. The land-grant and percentage deductions on these two items, as stated in the petition, total $456.77 and $4.36, respectively. The act of June 13, 1902 (32 Stat., chap. 1079, pp. 372-373), makes the Board of Engineers a permanent body. Section 3 of the act is as follows:'
“ ‘ That there shall be organized in the Office of the Chief of Engineers, United States Army, by detail from time to *284 time from the Corps of Engineers, a board of five engineer officers, whose duties shall be fixed by the Chief of Engineers, and to whom shall be referred for consideration and recommendation, in addition to any other duties assigned, so far as in the opinion of the Chief of Engineers may be necessary, all reports upon examinations and surveys provided for by Congress, and all projects or changes in projects for works of river and harbor improvement heretofore or hereafter provided for. * * *
“ ‘ The board shall have authority, with the approval of the Chief of Engineers, to rent quarters, if necessary, for the proper transaction of its business and to employ such civil employees as may, in the opinion of the Chief of Engineers, be required for properly transacting the business assigned to it, and the necessary expenses of the board shall be paid from allotments made by the Chief of Engineers from any appropriations made by Congress for the work or works to which the duties of the board pertain.’
“The California Débris Commission, erected by statute into a permanent governmental agency, was established by the act of March 1, 1893 (27 Stat. 507). Sections 1 and 4 of the act provide:
“ ‘ That a commission is hereby created, to be known as the California Débris Commission, consisting of three members. The President of the United States shall, by and with the advice and consent of the Senate, appoint the commission from officers of the Corps of Engineers, United States Army. Vacancies occurring therein shall be filled in like manner. It shall have the authority, and exercise the powers hereinafter set forth, under the supervision of the Chief of Engineers and direction of the Secretary of War.’
*******
“ ‘ That it shall be the duty of said commission to mature and adopt such plan or plans, from examinations and surveys already made and from such additional examinations and surveys as it may deem necessary, as will improve the navigability of all the rivers comprising said systems, deepen their channels, and protect their banks. Such plan or plans shall be matured with a view of making the same effective as against the encroachment of and damage from débris resulting from mining operations, natural erosions, or other causes, with a view of restoring, as near as practicable and the necessities of commerce and navigation demand, the navigability of said rivers to the condition existing in eighteen hundred and sixty, and permitting mining by the hydraulic process, as the term is understood in said State, to be carried on, provided the same can be accom- *285 plisbecl without injury to the navigability of said rivers or the lands adjacent thereto.’
“ The plaintiff expresses positive disapproval of this court’s decision in the Illinois Central and Louisville & Nashville cases (supra), and presses the same point in argument with respect to this item of its suit, i. e., that under the decision of the Supreme Court in the case of the United States v. Union Pacific Railroad Co., 249 U. S. 354, ‘the word “ troops ” had (and it has ever since had) an established meaning — namely, “ soldiers collectively — a body of soldiers.” ’ If plaintiff’s analysis and conclusions as to the conclusive effect of the decision of the Supreme Court in the Union Pacific case (supra) are correct, obviously transportation furnished an officer traveling in peace time,.under detail so to do, irrespective of the purpose of his journey, affords the Government no right to the reduced fare stipulated in the land-grant acts, and this court was in error in holding otherwise in the cases challenged. In the statement just made we assume that a wholly different situation prevails in war time. In the Union Pacific case the class of persons for whom the reduced land-grant rates were claimed was distinctly civilian, and in no sense ‘military,’ i. e., as the court said: ‘ Their status is that of the civilian ’; and it was in nowise altered because Congress saw fit to make ‘ special provisions for their transportation.’ In the present instance we have officers of the Army in active service, detailed by proper authority to perform a service which we think must embrace an element of military concern. The transportation of troops in war time is of vital concern, and the very fact that Congress creates permanent commissions composed exclusively of engineer officers of the Army indicates a conception of the necessity of entrusting the supervision of the improvement of rivers and harbors to the military department of the Government. While it may be said that the primary purpose of the improvement of rivers and harbors has to do with interstate and foreign commerce, this fact does not exclude the additional vital interest of the Government in times of war, and unless it may be said that the officer’s travel must be confined exclusively to military duty, the plaintiff’s insistence seems to us untenable. The Panama Canal is not alone a commercial artery of inestimable value; its military significance is recognized.
“ This court is committed to the rule that where an officer of the Army is detailed to a specific service, involving Government business in which the Army is concerned, land-grant rates of transportation over land-grant railroads obtain.
*286 “ In the Illinois Central Case, 62 C. Cls. 61, 65, 66, this court said:
“' When ordered to perform duty he is doing so, not for his own purposes, but for the purposes of the Government, and when traveling to the place to which he has been ordered he is being transported for the convenience of the Government. The fact that these officers were individual officers of the Eeserve Corps, traveling to and from encampments under orders of the Secretary of War, does not alter their status. They are a part of the Army of the United States and must be classed as “ troops of the United States ” within the meaning of the land-grant acts. If they are not troops of the United States, what are they? They are not militia officers, they are not National Guard officers, they are not persons attached to the Military Establishment, but having no status as soldiers. Such being the case the conclusion is inevitable that they are a part of the Army of the United States, and when on active duty and being transported for the purposes and convenience of the Government they must be classified as troops of the United States.’
“ Officers of the Army are moved to various military stations and posts, as often individually as collectively, and to restrict the significance of the word ‘ troops ’ to the extent contended for is contrary to our former holdings and convictions. The error we think the plaintiff falls into is the assertion that the improvement of rivers and harbors involves a duty upon the part of the officer of a strictly nonmilitary character. The twofold purpose of such enter-
Srises we think is apparent. The Attorney General, in 19 »ps. Atty. Gen’l 572-575, expressly held that officers of the Engineer Corps of the Army under the precise situation obtaining in this case must be transported at land-grant rates.
“ What we have said applies to the next item in suit, i. e., enlisted men of the Army acting as military escorts accompanying the remains of deceased soldiers. The defendant concedes, and we think properly so, that three transportation requests involved in this item, a difference of $60.58, were not issued for the transportation of enlisted men of the Army. Two of the said requests were issued for civilian attendants, and one for the remains of the deceased soldier. The plaintiff is entitled to a judgment for $60.58.
“ The status of retired officers and enlisted men was passed on in the Union Pacific case (supra). The plaintiff is entitled to recover under this item. The defendant concedes error in making the deductions. Judgment will be awarded under this item for $64.42.
*287 “ The Illinois Central and Louisville & Nashville cases (supra) determined the status of retired officers and enlisted men on active duty. The petition as to this item will be dismissed.
“ The claim designated ‘ stranded enlisted men ’ is, in accord with the facts, conceded by the defendant to be the equivalent of a status of an enlisted man of the Navy traveling on furlough. Judgment for the amount claimed, $46.42, will be awarded. United States v. Union Pacific Railroad Co., 249 U. S. 354, 360.”
To the views thus expressed we do now adhere. The single remaining question for decision is whether the Government is entitled to land-grant deductions when the cost of transportation is charged against and deducted from the pay of the party transported.
The plaintiff contends that whenever the cost of the transportation of a soldier was charged by the Government to the soldier it is the duty of the court to hold such transportation as of a nonmilitary character and the Government not entitled to land-grant deductions. The accounting officers of the Government, on the other hand, insist that where soldiers are transported, i. e., those in military service of the United States, the charging against them of the cost of such transportation is imposed by way of penalty and is for disciplinary purposes with which the railroad has no concern. Attention is. to be directed to the fact that Finding VI discloses that except as to two instances the large number óf soldiers transported were of two classes. One class was composed of enlisted men of the Army, Navy, or Marine Corps who had been convicted of some offense by a court-martial and were en route under guard of enlisted men to the prisons where they were to be confined. The other class was composed of enlisted men of the Army, Navy, or Marine Corps en route under guard of enlisted men for some reason Other than a conviction and sentence of a court-martial. In other words, all were prisoners. The transportation requests presented to the plaintiff bore upon their face in the instances found in Finding VI the following: “ Commanding officer notified of the amount to be charged against soldier,” and in the instances found in Finding VI the defendant admits that the transportation costs were *288 charged against the soldier. In other instances found, the cost of transportation was charged against the soldier but not collected for some reason or other, and in one instance it was collected and later refunded.
When the case was first before the court we were of the opinion that land-grant deductions from commercial fares, where the cost of such transportation was charged and collected from the soldier, could not be sustained, and we awarded judgment accordingly. Our views were then predicated upon the fact that the defendant by making such an endorsement upon the transportation requests established the status of the soldier in so far as travel was involved, i. e., expressly characterized the travel as of a nonmilitary kind, and having given the railroad notice of such by the endorsement defendant, in the absence of proof to the contrary, was not entitled to the deductions made. In addition to this, the Interterritorial Military Arrangement, effective January 1, 1921, provided as follows:
“ On travel of soldiers on furlough or in other cases where the entire cost of transportation is not paid by the United States Government,” land-grant deductions will not be made. A soldier or group of soldiers traveling at Government expense for a military purpose under proper orders does not require, and the railroad company may not exact, an endorsement upon the transportation requests similar to the one now at issue. The law, it is exact to say, fixes the soldier’s status, but lawful military orders may temporarily alter his status in so far as the cost of transporting him is concerned, affecting both the rights of the railroad and the Government. As was said in United States v. Union Pacific Railroad Co., 249 U. S. 854, 360:
“ The furloughed soldier is, of course, a part of the Army or troops of the United States; but his transportation back to the proper station is not ‘ transportation of troops ’ within the meaning of the land-grant acts. The furloughed soldier travels for his own purposes. The Government merely advances to him the cost of transportation and subsistence while on furlough; and does this, only if the soldier lacks funds to bear the expense himself. The advance must be repaid.”
The defendant argues and asserts that the recoupment of the cost of transporting the prisoners and guards is *289 part of the penalty imposed upon him for the violation of military laws or for disciplinary infractions. We have no evidence to that effect. The stipulation of facts does not so recite. Reference is made thereto in the statement of the contentions of the parties. Such may or may not be the fact. Of course, in a strict sense it may not be said that a convicted prisoner of the Army en route to prison is traveling for his own purpose. He has no choice, and the Army authorities are but discharging a duty in relation to his transportation. Beyond doubt such a soldier is a soldier in the Army until by proper military procedure he is separated therefrom. The statutes fix the right to land-grant deductions, and if we are correct in our construction of them as between the railroad and the Government the latter is entitled to them when the transportation falls within the land-grant acts, irrespective of what may take place between the soldier and the Government. If the Government imposes upon the soldier an illegal deduction from his pay, the right to recover it is open to the soldier. The land-grant acts conferred mutual benefits, and if the transportation is furnished to troops of the United States the right to the deduction obtains. The exceptions which the courts have recognized, the cases in which commercial rates have been allowed, have uniformly turned upon whether the soldier or soldiers were part of the Army of the United States at the time the transportation was accomplished and at the time traveling under proper orders in pursuit of military affairs and duties. Finding VI shows that the soldiers transported were admittedly in the Army, Navy, or Marine Corps; that the guards in custody of them were enlisted men of the Army, Navy, or Marine Corps, traveling to discharge an imperative military duty, and hence under our former decisions troops of the United States. As this court said in the Chicago, Rock Island & Pacific Railway Company case, 58 C. Cls. 33, 36—
“Whether expense of travel performed by a guard and his prisoner is or is not charged against the prisoner as a part of the penalty inflicted upon him or otherwise can not of itself affect the status of the guard or impair the rights of the Government as between it and the carrier.”
*290 In this case another factor impels our reversal of our former opinion. In many instances when the transportation requests bore the endorsement “ Commanding officer notified of the amount to be charged against soldier,” the cost of the transportation was so charged against him but never collected. In other cases a portion of the cost was charged and collected, and in others no such charge at all was made. Therefore it seems to us that the endorsement, aside from its unreliability as an index of the status of a prisoner soldier, may have been no more than a notation for the benefit of accounting when the transportation request was finally returned to the Goverment. The plaintiff insists that to permit the Government to deduct under the facts of this case is to extend the benefits of the land-grant acts to the individual soldier and not the Government. This contention, we think, would lead us, as the defendant in its brief observes, into the investigation of a collateral issue, i. e., whether the Government was lawfully authorized to deduct and for what purposes the deduction was made. If the penalty imposed upon the prisoners transported included a sequestration of part of their pay, in view of the fact that the expense involved was of their own wrongful instigation, the railroad would have no right to complain. The issue, we think, in the present case is somewhat restricted as between the plaintiff and defendant and pertains only to the relationship of the parties involved. The stipulated Finding VI fixes the status of the soldiers transported as between the plaintiff and defendant.
The transportation requests for the transportation of 23 enlisted men en route to proper stations or returning to proper stations were endorsed “ Commanding officer notified of the amount to be charged against soldier.” We think as to this transportation a different rule applies than the one applicable to the transportation of prisoners and their guards. In the Union Pacific case, 249 U. S. 354, the Supreme Court decided that a furloughed soldier traveling to his proper station after the expiration of his furlough was traveling for his own convenience, and if the Government *291 advanced the cost of such transportation it must be repaid, and hence such transportation was not of the character for which land-grant deductions might be made. Finding VI, as to these 23 enlisted men, does not specifically disclose the purpose of the travel, but the transportation requests with the heretofore noted endorsement thereon warrant the inference, we think, in the absence of positive proof to the contrary, that the soldiers involved were to pay therefor; otherwise the endorsement was meaningless. The railroad possesses no means of knowing the character of travel other than what may be obtained from the requests, and we can not escape the conclusion that as to these soldiers the cost of their transportation was to be charged against them because it was not travel for which land-grant deductions could be taken.
What we have said applies to the eight Navy men shown on the request as “ stragglers.”. While the finding does not positively state that the transportation request bore the endorsement relied upon, the plaintiff in its brief states that it did, and the defendant does not contradict it. We think it is a legitimate inference from the finding as a whole that the endorsement did appear. The parties were addressing themselves to this single issue and where the endorsement did not so appear it is so found. As to the sis enlisted men where no such endorsement appeared, land-grant deductions were available to the defendant. As previously observed, the endorsement must have served as to this particular class of soldiers a distinct purpose, and if it appears in some instances and is omitted in others this but emphasizes the fact that the defendant’s officers found the travel of a character for which the soldier for his own purposes must pay. As to this class of persons the issue is not resolvable upon the single fact of the status of the man as a soldier. A furloughed soldier is none the less a soldier in the Army. The Supreme Court places the right of the railroad to commercial rates upon the ground that he is traveling for his own purposes, a journey individual to him, and disconnected with, travel designated “ transportation of troops.” The plaintiff is, we think, entitled to a judgment for $272.05 in the case of the *292 23 enlisted men and $50.24 for the “ stragglers,” making, as held in this opinion, a total judgment of $493.71.
Whalet, Judge; Williams, Judge; LittletoN, Judge; and GeeeN, Judge, concur.